Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR LEE, | Case No: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| CITRIX SYSTEMS, INC., BOB CALDERONI, NANCI CALDWELL, MURRAY J. DEMO, THOMAS HOGAN, MOIRA KILCOYNE, ROBERT E. KNOWLING, JR., PETER JOHN SACRIPANTI, and JD SHERMAN, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Arthur Lee ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's

complaint against Defendants (defined below), alleges the following based upon personal

knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other

matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.       This is an action against Citrix Systems, Inc. ("Citrix" or the "Company") and its

Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Citrix by affiliates of Vista Equity Partners ("Vista") and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of Citrix common stock.

7.      Defendant Citrix is an enterprise software company that provides workspace, app delivery and security, and professional services worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "CTXS."

8.      Defendant Bob Calderoni ("Calderoni") is Interim President, Chief Executive Officer, and Chairman of the Board of the Company.

9.      Defendant Nanci Caldwell ("Caldwell") is a director of the Company.

10.     Defendant Murray J. Demo ("Demo") is a director of the Company.

11.     Defendant Thomas Hogan ("Hogan") is a director of the Company.

12.     Defendant Moira Kilcoyne ("Kilcoyne") is a director of the Company.

13.     Defendant Robert E. Knowling, Jr. ("Knowling") is a director of the Company.

14.     Defendant Peter John Sacripanti ("Sacripanti") is a director of the Company.

15.     Defendant JD Sherman ("Sherman") is a director of the Company.

16.     Defendants Calderoni, Caldwell, Demo, Hogan, Kilcoyne, Knowling, Sacripanti, and Sherman are collectively referred to herein as the "Individual Defendants."

17.     Defendants Citrix and the Individual Defendants are collectively referred to herein as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

18.     On January 31, 2022, Citrix announced that it had entered into a definitive agreement under which affiliates of Vista and Evergreen would acquire Citrix in an all-cash transaction for $104.00 in cash per share. The press release announcing the Proposed Transaction states, in pertinent part:

**Citrix to Be Acquired by Affiliates of Vista Equity Partners and Evergreen Coast Capital for $16.5 Billion**

*Citrix shareholders to receive a 30% premium to Citrix's unaffected price*

*Acquisition will take Citrix private, allowing company to accelerate its SaaS transformation, increase investment, and expand platform for secure hybrid work*

*Citrix to combine with Vista portfolio company TIBCO Software to create global digital workspace and data analytics leader*

January 31, 2022 08:00 AM Eastern Standard Time

FORT LAUDERDALE, Fla.--(BUSINESS WIRE)--Citrix Systems, Inc. (NASDAQ: CTXS) ("Citrix"), today announced that it has entered into a definitive agreement under which affiliates of Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data and technology-enabled businesses, and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Citrix in an all-cash transaction valued at $16.5 billion, including the assumption of Citrix debt.

Under the terms of the agreement, Citrix shareholders will receive $104.00 in cash per share. The per share purchase price represents a premium of 30 percent over the Company's unaffected 5-day VWAP as of December 7, 2021, the last trading day before market speculation regarding a potential transaction, and a premium of 24 percent over the closing price on December 20, 2021, the last trading day prior to media reports regarding a potential bid from Vista and Evergreen.

\*       \*       \*

**Terms of the Transaction**

The transaction, which has been unanimously approved by the members of the Citrix Board of Directors voting on the matter, is expected to close mid-year, subject to customary closing conditions, including approval by Citrix shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition. Upon completion of the transaction, Citrix's shares will no longer trade on the Nasdaq, and Citrix will become a private company. Citrix will continue to operate under the Citrix name and brand, and will remain headquartered in Fort Lauderdale, FL.

Elliott and certain of its affiliates, which hold an approximately 12% interest in Citrix through a combination of outstanding shares of Citrix common stock and derivatives, have entered into a voting agreement with Citrix, pursuant to which

they have agreed, among other things, to vote their shares of Citrix common stock in favor of the transaction.

*    *    *

**Advisors**

Qatalyst Partners is serving as financial advisor to Citrix, and Goodwin Procter LLP is acting as legal counsel.

BofA Securities, Barclays, Citi, Credit Suisse, Goldman Sachs & Co. LLC, Lazard and Mizuho Securities USA LLC, are serving as financial advisors to Vista and Evergreen. Kirkland & Ellis LLP is acting as legal counsel for Vista and TIBCO, and Gibson, Dunn & Crutcher LLP and Debevoise & Plimpton LLP are acting as legal counsel for Evergreen.

**About Citrix**

Citrix (NASDAQ: CTXS) builds the secure, unified digital workspace technology that helps organizations unlock human potential and deliver a consistent workspace experience wherever work needs to get done. With Citrix, users get a seamless work experience and IT has a unified platform to secure, manage, and monitor diverse technologies in complex cloud environments.

**About Vista Equity Partners**

Vista is a leading global investment firm with more than $86 billion in assets under management as of September 30, 2021. The firm exclusively invests in enterprise software, data and technology-enabled organizations across private equity, permanent capital, credit, and public equity strategies, bringing an approach that prioritizes creating enduring market value for the benefit of its global ecosystem of investors, companies, customers and employees. Vista's investments are anchored by a sizable long-term capital base, experience in structuring technology-oriented transactions and proven, flexible management techniques that drive sustainable growth. Vista believes the transformative power of technology is the key to an even better future – a healthier planet, a smarter economy, a diverse and inclusive community and a broader path to prosperity. Further information is available at vistaequitypartners.com. Follow Vista on LinkedIn, @Vista Equity Partners, and on Twitter, @Vista_Equity.

**About Elliott and Evergreen**

Elliott Investment Management L.P. manages approximately $51.5 billion of assets. Its flagship fund, Elliott Associates, L.P., was founded in 1977, making it one of the oldest funds under continuous management. The Elliott funds' investors include pension plans, sovereign wealth funds, endowments, foundations, funds-

of-funds, high net worth individuals and families, and employees of the firm. Evergreen Coast Capital Corp. is Elliott's Menlo Park affiliate, which focuses on technology investing.

**About TIBCO**

TIBCO Software Inc. unlocks the potential of real-time data for making faster, smarter decisions. Our Connected Intelligence platform seamlessly connects any application or data source; intelligently unifies data for greater access, trust, and control; and confidently predicts outcomes in real time and at scale. Learn how solutions to our customers' most critical business challenges are made possible by TIBCO at www.tibco.com.

19.     On March 16, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Proxy Statement, which recommends that Citrix shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Citrix's financial projections; (ii) the financial analyses performed by Citrix's financial advisor, Qatalyst Partners LP ("Qatalyst"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

21.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Citrix Board; (iii) Opinion of Qatalyst Partners; and (iv) Certain Financial Projections.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the April 21, 2022 shareholder vote on the Proposed Transaction, Citrix shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated,

Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Citrix's Financial Projections

23.     The Proxy Statement omits material information concerning Citrix's financial projections.

24.     With respect to Citrix's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying each set of the Company's projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

27.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Qatalyst's Analyses**

28.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Qatalyst.

29.     The Proxy Statement fails to disclose the following concerning Qatalyst's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) range of discount rates of 8.0% to 9.5%, and (ii) multiples of 12.0x to 17.0x; (2) the terminal value of Citrix; and (3) the number of fully diluted shares of Citrix common stock as of January 26, 2022.

30.     The Proxy Statement fails to disclose the following concerning Qatalyst's "*Selected Companies Analysis*": (1) the financial metrics of each company Qatalyst observed in its analyses, including each company's fully diluted enterprise value, estimated consensus EBITDA for calendar year 2022, and consensus levered free cash flow for calendar year 2022; and (2) the basis for applying the representative range of multiples.

31.     The Proxy Statement fails to disclose the following concerning Qatalyst's "*Selected Transactions Analysis*": (1) the financial metrics of each company Qatalyst observed in its

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 18, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

analyses, including each company's enterprise value, consensus estimates of the next-twelve-months revenue, and research analyst consensus estimates of the next-twelve-months EBITDA; (2) the value of each transaction; (3) the closing date of each transaction; and (4) the basis for applying the representative range of multiples.

32.     The valuation methods, underlying assumptions, and key inputs used by Qatalyst in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Qatalyst's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

33.     Without the information described above, the Company's shareholders are unable to fully understand Qatalyst's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

34.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

35.     The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

36.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders.

37.     The Proxy Statement fails to disclose the duration of the prior consulting

relationship between Elliott and Defendant Calderoni that ended in July 2019, and the amount of compensation Elliott paid to Defendant Calderoni in connection with that relationship.

38.    This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

39.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## <u>COUNT I</u>
### **For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder** <br> **<u>Against All Defendants</u>**

40.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42.    Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

43.    The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

44.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45.    Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

46.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

48.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: March 18, 2022                                  Respectfully submitted,

**HALPER SADEH LLP**

<u>/s/ Daniel Sadeh</u>
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
            zhalper@halpersadeh.com

*Counsel for Plaintiff*